We're going to, I'm representative for the petitioner Carlos Alberto Flores López, and I'll be speaking for nine minutes about whether California Criminal Code 69 is an aggravated felon crime of violence. And the consolidated petitioner's counsel for Benjamin Bautista-Magallon will be speaking for four minutes about his client's eligibility to relief from removal. And then we'll reserve, if it pleases the court, two minutes for rebuttal. Thank you. May it please the court, my name is Holly Cooper and I'm appearing on behalf of Petitioner Carlos Alberto Flores López in a consolidated case with Petitioner Benjamin Bautista-Magallon. First, Petitioner Flores López contends that because the Attorney General, in its brief, failed to controvert any of the merits of Petitioner's argument that resisting arrest under California Penal Code Section 69 is not an aggravated felony, that he has waived the substantive challenges to his client's eligibility. Second, addressing the narrow issue that remains in this case, which is whether this case should be remanded, the government in both Flores López and in Bautista-Magallon's case has requested remands due to the intervening precedent of Nisha Wan from the United States Supreme Court, as well as Aguila Montes-Tioca, this court's recent en banc decision regarding the categorical. Well, it seems on that issue as well, though, that I believe it was your client that two days before the hearing filed a motion to terminate. Is it your client that did that down in front of the IJ or was it Bautista? I don't believe it was my client, Your Honor. Well, I don't know. The record seems to indicate that there was a petition to terminate two days before the government asked for a continuance and the IJ said no and forced them to go ahead. The two days didn't even allow time to file a response, much less time to prepare. So that's part of the argument saying, well, you know, when you say you don't get two bites of the apple, it's if you never got the first bite, why, you know, it would seem that you have less equities on your side than people do normally when you two days before the hearing file something and the government doesn't have time to get ready. And, you know, if it were the flip side and you were arguing for that, saying, well, the IJ wouldn't give me a continuance, you'd be screaming just as loud as they are and you'd have a good argument. Correct. If the government had raised that issue and had appealed that issue, it would be squarely before this court. Also, we'd like to address that this case was before the board. It did go to the Board of Immigration Appeals on that issue. And the board did remand it for. But then there was a motion for reconsideration. So there's a very convoluted procedural history plus intervening case law from the Supreme Court and also missing element concept on how to do the modified categorical. So there's, you couldn't have more complication as far as that goes. And then, plus that, in terms of the, you know, that, and then there's another complication in terms of where if we were to do the modified categorical approach, the Ninth Circuit has conflicting precedent in terms of when something is written in the conjunctive that the earlier cases say that that means that if one of them is, would satisfy, then that's enough, which you have that in this situation. And then there's a subsequent case in the Ninth Circuit that says, no, if it's in the conjunctive, the petitioner gets the benefit of the one that wouldn't be specific intent. However, a subsequent panel of the Ninth Circuit, unless it's on BOC, can't overrule a prior precedent. And it, and so you've got, I mean, you couldn't have more confusing things going on. Correct, Your Honor. Why don't, why don't you like lay out what exactly is going on? I mean, what happened with procedurally in this case? Procedurally what happened is that the government filed a notice to appear in this case, charging our client with an aggravated felony under the Crime of Violence Section, under USC Section 1101A43F, and then the petitioner filed a motion to terminate, saying that he was not deportable. Now, which, this is Flores? This is Flores, yes, excuse me, Your Honor. And the judge granted that motion to terminate. The government appealed and went to the Board of Immigration Appeals. They, they affirmed the government's appeal and remanded to the immigration judge for the institution of a removal order. Petitioner reasserted his claim that he was not deportable. The case went to the Board of Immigration Appeals, and there the government filed a motion to remand for a new conviction. The, the Board of Immigration Appeals did grant that motion to remand. Then my client, petitioner, Carlos Alberto Flores Lopez, filed a motion to reconsider that decision, saying that the, the remand order was inappropriate because it didn't meet the requisite standard for a motion to reopen, to, to, for a motion to re, reopen remand. The court then reconsidered that, granted our motion to reconsider, and said, you're, you're right, a motion to remand in this instance is improper, so we will reach the merits of whether a crime of violence is an aggravated felony. They reached the merits and found that it was categorically a match between the resisting arrest California statute as well as the federal definition of a crime of violence. With respect to Judge Callahan's question about the government didn't have a chance to adequately build its case, the government in this case, in its motion to remand, it's, it's filed at least one motion to remand as well as reasserted that, that request in its response brief. But the government has never asserted that it wants a remand to build a case. It merely wants a remand for this court, for the Board of Immigration Appeals to have an opportunity to, to define its position in light of these two precedents. Well, is this, and, and might be confusing the two cases, but is Flores-Lopez the case where the government did introduce all the evidence about the crime of conviction for the modified categorical approach? In both cases, the government submitted record of conviction documents that are somewhat similar. The government in Flores-Lopez submitted an abstract of judgment as well as a complaint that mirrors the statute, but does have conjunctive language in it. For Mr. Benjamin Magallon, Bautista Magallon's case, the government submitted as well a felony complaint along with an abstract of judgment. In response to Judge Callahan's question as well about the conjunctive pleading, yes, there is conflicting precedent between, I think it's Malta-Espinosa was one of the first cases that found the conjunctive should be read as a disjunctive in the pleading phase. And I know that this issue is currently pending en banc before this court in Young v. Holder. So I'm not sure if the appropriate, you know, procedural, procedural mechanism would be to hold this case in abeyance if, if the conjunctive pleadings becomes a dispositive issue for this court. However, we would contend that even with the conjunctive pleading, even if he did plead, you know, guilty in the conjunctive, that it still would not be enough to meet the crime of violence definition because the words force and violence and threats don't necessarily indicate the use of violent force as the United States Supreme Court has indicated that it must. Somewhere in there too, isn't there some sort of motion from the government to add charges? There was. That was the motion to re, that was the motion to remand that the government brought before the Board of Immigration Appeals. It was, It was originally granted. It was a motion to reconsider and the Board of Immigration Appeals said you're correct because to meet a motion to remand before the agency, you must show that this was new evidence that was not available at the time of the hearing and the government could not make that showing. But then the BIA rules against you and says it's a categorical crime. So there's really never been any, no one's really engaged in the modified at this point. No one has, but this court sitting en banc in Fernandez Ruiz has said that it's not necessary to remand to apply the modified categorical approach. And that was an en banc decision as well dealing with a crime of violence and in there the Board had only reached that the aggravated assault statute under Arizona law in that case was categorically a match. Well, if we did it here and if we applied the earlier cases, say in the second cases, saying the conjunctive means the disjunctive, then you would lose. I'm not sure we can reach that issue if it's pending on, or should, if it's pending on banc. Well, right. But if that aside, but there's that problem too, right? Right. Your Honor, would you like me to answer your question or was there? No, please answer her question. Okay. Answer the judge's question. Yes, I believe that whether or not he pled guilty, if the complaint was listed in the disjunctive or the conjunctive, I believe that petitioner's crime nonetheless would not meet the generic definition or the definition set forth of a crime of violence under 18 U.S.C. Well, that's a categorical. That's categorical. Even under the modified categorical, sorry, did you want me to say something? No, I mean, the, the question of, the legal question you're asking us to decide is whether or not section 69 is a categorical because that's, the V.I.A. decided that it was a, it was categorically a crime of violence. Yes, Your Honor. And I think we've had intervening authority that says it's not. We have intervening authority. There's unpublished precedent that says that it's not a categorical match, but it is unpublished precedent that predates Avila-Montes de Yoca. But this, even if the board didn't apply, we would contend that under the categorical approach, there's a mismatch and the inquiry should end there. However, should this court feel it necessary to engage in a modified categorical inquiry, we feel this court has the authority to do so under Fernandez-Ruiz, which did not find it was necessary to remand to employ a modified categorical inquiry. But then I think what Judge Wardlaw is saying, if there's, if the matter of whether the disjunctive or the conjunctive of really what it means, that's relevant to doing the modified categorical here. So we wouldn't really be able to do it until the en banc court. If this court feels that the conjunctive or disjunctive would be dispositive of the case, petitioners' potential would be that it is not. What's the detention status of each of these petitioners? Both petitioners are no longer detained. Both have been removed to their native countries. Both are removed already? My client is in El Salvador, and I believe Mr. Bautista-Magallon is in Mexico. Okay. Now, did you want to? Thank you. May it please the court, my name is Andrew Fishkin, representing Benjamin Bautista-Magallon, joined with Carlos Flores-Lopez. I'd like to address three issues today. The court, this, that this court has jurisdiction to review the finding of particularly serious crime in regards to withholding of removal and convention against torture. Whether or not the BIA performed a sufficient analysis of, of penal code section 69 and 71 as particularly serious crime. And finally, whether or not Mr. Bautista-Magallon waived his claim that it's not a particularly serious crime. With regard to jurisdiction, I'd just like to submit that this court's recent decision in Delgado Beholder establishes jurisdiction clearly. With regard to the analysis, the Board of Immigration Appeals, in its opinion, omitted the, omitted any mention of whether or not the facts, the sentence,  to this appellant's crime indicates that he is a danger to the community. And even with regard to the sentence and the nature of the conviction, they only use those buzzwords, nature of conviction and sentence. They didn't go into any analysis whatsoever. I believe it's in Movsisyan v. Ashcroft in 2005 that this court established standards for the BIA where their decisions must be clear and reasoned. And I believe that in this case, the BIA simply did not do that. Finally, with regard to waiver, the government asserts that Mr. Bautista Magallon waived his claim. Even if they, even if that argument is sustained, there is an exception to waiver available under Huerta Guevara in 2003, if it's purely a matter of law and if no prejudice occurs to the opposing party, which I believe is, is in fact in this case. I'd like to reserve two minutes for rebuttal. Thank you. Thank you. Thank you. May it please the court, Jane Schaffner for the respondent. There have been significant developments in the case law since the board rendered its decisions in these cases four years ago. In those decisions, the board concluded that petitioners' convictions under California Penal Code 69 categorically crimes of violence. Well, let me just ask you this. On, there have been, what's the government's position on, I mean, we could decide it before, we, I mean, we could decide that issue right here. What's your position on whether Section 69 is categorically a crime of violence? We believe in light of the intervening case law, the three unpublished decisions that this court has issued, in particular in Garcia, Shaman and Aguizabal, that it is not categorically a crime of violence. So why don't we just decide that here? Because, and then deal with remand issues otherwise. What? Because you're saying to say, well, let's go back and let the agency decide that issue first. But if the government's position is it's not a categorically a crime, that's something that we can do here too, right? That's correct. And then the next step would be to apply the modified categorical approach. And But my understanding is you're generally just saying send the whole thing back, let them do it in the first instance, determining on the categorical, right? I had that same question because it seems to me if you're arguing for remand for the board to decide a question of you know, of statutory law that's not immigration, that's, you know, that's a legal question that we typically decide that's really not appropriate. And under Fernandez-Ruiz, which I dissented on a different ground, but on in Fernandez-Ruiz, we said en banc, that, you know, we decide questions of law that are not, you know, questions that are typically within the purview of the Immigration Court. So I've been trying to figure out just what it is that you want remanded because I mean is what you're trying, what you want remanded seems to me like in Batista, you want it remanded because there might be another violation of law that you want adjudicated and that in Flores-Lopez, you might want it remanded to have a finding, have the BIA decide the modified categorical question, which it can't really decide yet either because we have that pending en banc decision. So I'm not, I'm very confused about what exactly you're asking for, especially in light of your, I mean what you have to concede, which is Cal Penal Code section 69 is not categorically a crime of violence. Right, and we're asking, we're asking for three things essentially. We believe that if the court were to remand the case, the board would have to conclude that California Penal Code 69 is not categorically. It can't, I mean I think that's, by now we all agree it's not. So I think at minimum we decide that. So then what's the second thing you want remanded? And then the board, we believe should have an opportunity to apply the modified categorical approach. In light of Nijuan, we believe that there is an issue as to what documents are acceptable under the modified categorical. What precisely do you think is the issue? I'm sorry? What precisely is the issue that you think Nijuan presents for the, that's appropriate for the BIA to decide? We believe that the issue is is what documents the board can appropriately consider in applying the modified categorical approach. Now is that a question for the board or is that a question for the court? I mean if the board has to follow the law that that the Supreme Court and Ninth Circuit has set forth then what documents may be considered? So why do you think that's a question? Which documents can be considered for the the BIA? In Nijuan, the Supreme Court simply said that the Taylor-Shepard model was developed for a very different purpose than immigration proceedings are a very different sort of proceeding than the proceeding that that the Taylor-Shepard model was developed for. They did say that and it's interesting because I've always personally been a little bit confused. Why we apply Taylor and Shepard in the immigration context but it's really pretty clear that the court has us that we do that. I mean it's all I've always questioned that but it's pretty clear that that's what we do and you're thinking the BIA is free to do something else? I think that possibility is certainly something that the Supreme Court made available to the board in saying that that these are different proceedings that the lists have different purposes. What other things do you think you want to consider? And we also I mean what other documents that do you think should be considered other than the charge and the judgment? Is there a plea anywhere? There there were pleas in both cases. These gentlemen pled to their crimes. The only documents that that DHS produced in these cases were the abstracts of judgment and the criminal information for Mr. Flores and the complaint for Mr. Bautista but there are transcripts of plea, poloquies, other documents. Well let's okay that's just let's just sort of cut cut to it here. Now you complained about that you only had two days notice. You asked for an extension. The IJ didn't give it to you and you didn't even get to respond to their motion. I'm assuming that if what you're saying is correct now that there are other documents had you had time you could have produced. Is that true or not? That is true. In fact in Was the timing a factor there? I certainly believe so, yes. In fact after the petition for review in Flores-Lopez was filed after Nijuan was decided DHS attempted to introduce new evidence including a police report which is traditionally not been a document that the agency could consider but in light of Nijuan may be a document that the court could consider now. They tried to to introduce those documents and the board declined to to reopen the case on those grounds noting that the case was pending before the Ninth Circuit and they didn't feel it was appropriate to reopen. Well I mean generally speaking the concept is if you had notice of that you're going to have to do the modified categorical approach and you got this hearing set that we don't usually give people two bites at the apple because so are you saying that you didn't have notice that you were going to have to do the modified categorical and then when the two days before when you ask for a continuance you didn't have time to get together to put your best case on and that's why you're asking to go back or you're not saying that that's what I think DHS was always on notice that if if the IJ ruled that this was not categorically a crime of violence the next step would be the modified categorical approach but the two days to prepare and the lack of an opportunity to fully respond to the the petitioner's motion to terminate was certainly certainly an issue. What we're arguing is is less about what happened very on early on in the proceedings and more about the developments in the case law since then. I think that because of Nishwan you can now put in the police report. I think the board needs an opportunity to say whether the police report is a document that it would be willing to consider and they haven't had the opportunity. That would be appealed to the Ninth Circuit because if they said it was because under our existing authority, it's not. So this case would go on even longer. Right? And I think and I certainly appreciate those those concerns, but but we do believe that that because of the developments in the law. That's really as a practical matter really what we're talking about is you want to put in to the record documents that are that traditionally have not been allowed to be considered. So you have a police report. Do you have something else? What else do you have? I'm I don't know what's what's available. But haven't you had enough time to figure that out? I mean, there's police transcripts. You said there are police transcripts. That's that's true. Well and police transcripts usually say a factual basis for a plea. Have you looked at those? Yes. And in the in the flu they show that there was a there was violence. Yes. In the in the Flores Lopez case in particular the plea transcript shows that Mr. Flores Lopez raised his fists and threw punches and the officers restrained him. So why didn't you have all that? Why didn't you put it in at the time? Well, and that goes to the the two-day question. The fact that Petitioners Council filed a motion to terminate and the government only had two days. Well, didn't even have two days. The IJ issued his decision two days. But then you filed a motion to remand to the BIA and the BIA said no. I mean, did you put that evidence in front of the BIA then? Not at not at that time. At that time DHS sought to introduce evidence that Mr. Flores had been convicted in 2002 of assault with a deadly weapon and sentenced to 240 days. So you didn't need all that information then? Well, it certainly it certainly would have been helpful. I don't know why DHS did not introduce that evidence at that time. They apparently chose a different a different strategy and wanted to pursue additional charges of removability, two or more crimes involving moral turpitude and a charge an aggravated felony. So what does this section say about adding charges? That does the language say at any time while the matter is pending that DHS can add charges? That's correct. DHS can lodge charges at any time. So is this pending right now? Have you lodged those charges? I mean, you can do it at any time. Have you done it? I think there's some tension tension there because the board's decision in 2008 and Flores Lopez is considered a final order of removal. So DHS would need to have the case sent back to the board in order to lodge charges. Because initially the board granted your motion to reconsider to do that and remanded it. But then the board then changed it and said, no, it is a categorical crime of violence. And so then that kind of did away with that and then you came here. Okay. So what about what's your argument for remand on Batista Magallon? The argument is essentially the same. It's based on the same intervening, the same intervening. But you don't have the two days and all of that, right? No, we do not. We do not have those concerns in that case. Now, Mr. Batista, as I understand it, is mentally ill. Is that right? That's the understanding. And I mean, I was looking at the Morton memo the other day. It seems as though he would fit in that situation. Do you think we should send his case to mediation? I mean, I don't believe that this case necessarily falls within the Morton memo guidelines. Send it to mediation to see if it does. I mean, I don't, I don't, I mean, I can't decide that it does myself, but I'm just wondering. Well, do you know whether he's back in Mexico? Is he in an institution back in Mexico or do we know that? Because that was part of his concern, right? That in Mexico that they would not have a compassionate view of mental illness and they would basically lock him up and throw the key away. Right, right. That was definitely his claim. He had made two prior visits to Mexico in 2004 and 2005 and was not institutionalized during those prior visits. We have no information as to whether he has been institutionalized in the four years since, since he departed the country. Would you object to having the Ninth Circuit mediator figure out what's going on with him and discussing his resolution of his case? Mediation, I mean, no, I do not object. I'm not confident that the case would be amenable. I'm certainly not either, but I'm just wondering if you would be willing to figure out what's going on with him. Certainly. Has your department ever, you're familiar with the Morton Memorandum? Yes. Has your department looked at this particular case and the prosecutorial discretion that's in that memo? We have been looking at all of our cases and so these cases would be included within the cases we have reviewed for the exercise of prosecutorial discretion. These are a little different in the sense that they're both gone. So when people are both gone, does that put a different lens on when you look at them? Figuring, you know, as opposed to if they're still here and they got kids in high school and they've got all of those situations. Yes, because there are a number of considerations to take into account the cost of bringing them back, whether because these two individuals. Do you know, I mean, I'm just talking about Batista. Do you know whether his case in particular has been the subject or are you just saying generally you're looking at all the cases? We're looking at all of our cases. We've, as part of that review, we've looked at these cases and there's been no recommendation that these cases are appropriate for an exercise of prosecutorial discretion. The concern in both of these cases are both of these individuals have significant criminal convictions. So they do not appear amenable. So what are, what's Mr. Batista's record, Mr. Batista Magallon? Well, in addition to his 2003 convictions for violations of California Code 69, resisting an executive officer and 71, threatening a school officer, he was also convicted in 2002 under California Penal Code 589 for removing, displacing, or destroying part of a railroad or railroad track. Really? That's an interesting crime. Well, I mean, I could see it. I mean, if you're trying to derail a train, that would be a bad thing. But I don't know what that means. I've never heard of that. I've never heard of that. That's at page 300 of the record and there too, we have the abstract of judgment and we have the complaint so we don't know what the underlying. So on the resisting arrest of an executive officer, can you put some meat on that one, on those bones? I'm not quite, I don't quite understand what that crime is either. I mean, what did he do? In Mr. Batista's case, he apparently turned up at a school and was trying to enter the school and the officers at the school wanted to prevent him from entering the school and the struggle ensued. So the executive officer would be like a school principal or somebody or a school police? Security guard? Yes. Well, they assign police officers sometimes to schools. They have a, but why did they call to say don't let him on? What, probably this would be initiated by that someone at the school would say this guy's coming, don't let him on the grounds. Or what? Right, at the time of the offense, he was well beyond school age. He was in his, I believe, late 20s when he was trying to get onto the school grounds. So he had no business being on the school grounds at that time and that place. All right. Is there anything else you wish to add because you're well over your time? I apologize. I just quickly like to add that we maintain that Mr. Bautista has waived his challenge to the board's particular social crime. He mentioned it in an argument heading on page 14 of his brief, but there is no argument. Otherwise, it's not a statement of issues. And we believe that that issue is waived and we believe that the board correctly decided that it is not more likely than not.  All right. Thank you. Thank you. Thank you, Your Honors. In rebuttal, the government's concession that California Penal Code Section 69 is not a categorical match to the crime of violence definition is dispositive of the issue before this Court. And the Supreme Court, as well as this Court, have recognized that if there's not a categorical match, the inquiry ends, the issue is over, the issue of deportability is over, and a modified categorical approach becomes unnecessary. So if the modified categorical approach is unnecessary, then any remand or an issue on would both be moved. I'm not quite understanding. If we found it to be a categorical, not categorical, Yes. why then don't you go to the modified categorical? Because if the government is conceding that there's not a categorical match, that's the concession that under no circumstance would the conduct under California Penal Code 69 resisting arrest meet the federal definition of a crime of violence. But that's exactly when you go to the modified categorical. Under this Court's en banc precedent, as well as the – which we would contend does not – in Avila Montespioco, which we would contend does not apply retroactively. If even then, if you look at that case, it's clear that you only go to the modified categorical if there is either an overbroad statute, a divisible statute, something that's – that does meet the federal definition of a crime of violence. And here the government has said categorically, which means under no circumstance would the conduct prescribed under resisting arrest meet the crime of violence definition, the inquiry is over. So this concession would be dispositive for both petitions for review. Moreover, even if this Court were to consider Nijhawan and whether it should remand, that case was a – dealt with a circumstance-specific ground of deportability, the fraud ground of deportability. And it found a $10,000 loss to the victim was a circumstance-specific portion of the ground of deportability. Here we're dealing with a crime of violence ground of deportability, which the Supreme Court has held as a generic definition. Not – it's – and this Court as well, since Nijhawan, has decided multiple, at least five to six cases about crime of violence definition and has never found it as a circumstance-specific ground of deportability and has always found that the federal definition is a generic definition. So Nijhawan would not be relevant even if this Court were to explore the modified categorical approach. Moreover, the government, in no cases dealing with Nijhawan, has taken the position that it should apply the crime of violence definition. And we would argue that the government cannot take inconsistent positions in various litigation. Moreover, the government's 11th-hour attempt to argue that it was prejudiced because it wasn't given time before the trial court, this issue is waived. It was not exhausted before the Board of Immigration Appeals. And it is deemed waived because it was never a part of their brief. In their brief, the only reason they argue for remand, the central crux of that, is to give the Board the first bite of the apple of interpreting new case law. Moreover, we would object to the government testifying regarding evidence that we have not been able to see nor contemplate in this litigation. And the government's characterization, we would object to the government's characterization of evidence that's not in the record before this Court. In conclusion, we would like to ask this Court to vacate both orders of removal for Mr. Magallón, Batista Magallón, as well as Flores-Lopez, and to grant this to a view. Thank you, Your Honor. Thank you very much, Counsel. All right. Batista Magallón and Flores-Lopez will be submitted. Upton v. Picuri is submitted on the briefs, as is Fagel v. Fagel, R.M. v. Fagel. And we will take up United States v. Union auto sales.
judges: Martinez, Wardlaw, Callahan